WATFORD, Circuit Judge,
joined by McKEOWN and CLIFTON, Circuit Judges, concurring:
We took this case en banc to decide whether the Immigration and Nationality Act’s “habitual drunkard” provision, 8 U.S.C. § 1101(f)(1), is facially unconstitutional on the theory that it violates the equal protection component of the Fifth Amendment’s Due Process Clause. I think the majority rightly rejects that challenge, but my reasons for reaching that conclusion differ.
The statutory classification at issue does not implicate a fundamental right or target a suspect class, so it is subject to rational basis review. FCC v. Beach Communications, Inc., 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993); Fiallo v. Bell, 430 U.S. 787, 793 n.5, 97 S.Ct. 1473, *1052 52 L.Ed.2d 50 (1977). No one disputes that it is perfectly rational for Congress to deny cancellation of removal to those who lack good moral character. See 8 U.S.C. § 1229b(b)(l)(B). Congress’ judgment on that score is entitled to considerable deference, given the breadth of its authority to regulate the admission and exclusion of non-citizens. Fiallo, 430 U.S. at 792, 97 S.Ct. 1473. The only question, then, is whether Congress had a rational basis for establishing a conclusive presumption, not subject to rebuttal, that habitual drunkards lack good moral character, which is what § 1101(f)(1) does.
Conclusive presumptions of this sort are, by their nature, blunt instruments. No doubt there are individuals who, if given the opportunity to do so, could establish that they possess good moral character notwithstanding the fact that they are or were an habitual drunkard. It may well be that the petitioner in this case, Salomon Ledezma-Cosino, is one of those people. But the Supreme Court has long held that conclusive presumptions survive rational basis review even when the presumption established is both over- and underinclu-sive. See, e.g., Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 316-17, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (per curiam) (upholding mandatory retirement age of 50 for police officers); Weinberger v. Salfi, 422 U.S. 749, 776-77, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (upholding provision denying Social Security benefits to surviving spouse of wage earner married less than nine months at time of wage earner’s death). Here, if Congress could rationally conclude that a substantial number of those found to be habitual drunkards would also be found, upon examination, to lack good moral character, then it could establish the conclusive presumption' created by § 1101(f)(1) simply to avoid the administrative costs that individual determinations of good moral character would entail. See Salfi, 422 U.S. at 777, 95 S.Ct. 2457.
I think Congress could rationally conclude that most habitual drunkards would be found to lack good moral character if individual determinations were permitted. That could be true, of course, only if habitual drunkards may in some sense be deemed morally blameworthy for acquiring their condition, for it would be irrational to brand someone as lacking in good moral character due to a medical condition developed through no fault of their own. In my view, Congress could rationally deem habitual drunkards to be at least partially responsible for having developed their condition. Habitual drunkards are those who have allowed themselves to become so addicted to alcohol that they can no longer control their habit of drinking to excess. That loss of control does not come about overnight; it is acquired as a result of frequent, repetitive acts of excessive drinking. See, e.g., Bouvier’s Law Dictionary 489 (William Edward Baldwin ed., Baldwin’s Century ed. 1948) (defining the term “habitual drunkard” in this way: “A person given to inebriety or the excessive use of intoxicating drink, who has lost the power or the will, by frequent indulgence, to control his appetite for it.”). Drinking to excess with such frequency that it leads to the loss of one’s ability to refrain from excessive drinking in the future is conduct that Congress could rationally view as volitional, and therefore the proper subject of moral blame.
None of this is to say that Congress’ decision to regard habitual drunkards as morally blameworthy for their condition is a wise one. We know considerably more about alcohol addiction today than we did back in 1952, when Congress enacted § 1101(f)(1). Scientists tell us, for example, that some people are much more prone to becoming addicted to substances like aleo- *1053 hoi than others, with genetic factors accounting for 40 to 70 percent of individual differences in the risk for addiction. U.S. Department of Health and Human Services, Office of the Surgeon General, Facing Addiction in America: The Surgeon General’s Report on Alcohol, Drugs, and Health 2-22 (2016). In addition, there is a high correlation between alcohol abuse and post-traumatic stress disorder (PTSD), a condition that virtually no one could be blamed for acquiring. As the Surgeon General’s report notes, “[i]t is estimated that 30-60 percent of patients seeking treatment for alcohol use disorder meet criteria for PTSD, and approximately one third of individuals who have experienced PTSD have also experienced alcohol dependence at some point in their lives.” Id. at 2-22 to 2-23 (footnotes omitted).
Still, as a result of advances in our understanding of the neurobiology underlying addiction, we know that substance use disorders (including addiction, the most severe form) “typically develop gradually over time with repeated misuse” of the substance in question, and that one of the key factors in determining whether a person develops an addiction is “the amount, frequency, and duration of the misuse.” Id. at 1-6 to 1-7. Modern science thus confirms that, at least to some extent, there is indeed a volitional component to developing an addiction to alcohol, even if many other factors outside an individual’s control also contribute. Whether the volitional component is weighty enough to warrant treating habitual drunkards as morally blameworthy for their condition is a policy question for Congress to resolve. Under rational basis review, it is not for us “to judge the wisdom, fairness, or logic” of Congress’ decision in that regard. Beach Communications, 508 U.S. at 313, 113 S.Ct. 2096.
It has been suggested that Congress’ decision to treat habitual drunkards as lacking in good moral character is irrational because Congress has not classified individuals suffering from other chronic medical conditions, such as diabetes, heart disease, and bipolar disorder, as morally blameworthy for their conditions. The mere fact that a classification drawn by Congress may be underinclusive, however, is not sufficient to render it invalid under rational basis review. Salfi, 422 U.S. at 776, 95 S.Ct. 2457. In any event, Congress could rationally conclude that habitual drunkards are not similarly situated to those suffering from other medical conditions. Even if there is arguably a volitional component involved in developing medical conditions like diabetes and heart disease (say, consuming excessive amounts of sugar or red meat), Congress could rationally view that conduct as less morally blameworthy than consuming excessive amounts of alcohol to the point of losing control over the ability to abstain. Plus, the well-documented connection between alcohol addiction and harm to others (in the form of drunken driving, domestic violence, and the like) distinguishes alcohol addiction from other medical conditions that pose a risk primarily to the health of the individual sufferer, rather than to the safety of others. These differences provide a rational basis for Congress’ decision to classify habitual drunkards as lacking in good moral character, but not those suffering from other medical conditions.